IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00978-PAB-CBS

NORMAN MATTHEWS,
     Plaintiff,
v.

RON WILEY,
J. FOX,
JERRY JONES,
ROBERT A. HOOD,
MARK A. MUNSON,
MAUREEN S. CRUZ, and
JOHN T. SHARTLE,
     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

     This civil action comes before the court on "Defendants' Motion to Dismiss" (filed October 22, 2009) (doc. # 23). Pursuant to the Order of Reference dated May 27, 2009 (doc. # 5) and the memorandum dated October 23, 2009 (doc. # 24), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Matthews' Response (filed December 18, 2009) (doc. # 29), Defendants' Reply (filed December 22, 2009) (doc. # 30), Defendants' "Notice of Filing of Supplemental Authority" (filed March 31, 2010) (doc. # 31), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.     Statement of the Case

     Mr. Matthews is currently incarcerated at the United States Penitentiary, Administrative Maximum in Florence, Colorado ("ADX") for numerous criminal convictions, including: (1) transportation of stolen vehicles in interstate commerce in violation of 18 U.S.C. § 2312, *United States v. Matthews*, No. J 75 CR-22 (E.D. Ark. May 14, 1975), for

which he received a five-year sentence; (2) escape from the custody of a U.S. Marshal in violation of 18 U.S.C. § 751(a), *United States v. Matthews*, No. H 75 CR-5 (E.D. Ark. May 14, 1975), for which he received a five-year sentence; (3) voluntary manslaughter in violation of 18 U.S.C. § 1111, *United States v. Matthews*, No. CR 76-70-E (E.D. Ill. June 1, 1977), for which he received a 10-year sentence; (4) second degree murder in violation of 18 U.S.C. § 1111, *United States v. Matthews*, No. CR 78-02033-04-B (E.D. Ill. Dec. 27, 1978), for which he received a 10-year sentence; (5) murder in violation of 18 U.S.C. § 1111, *United States v. Matthews*, No. 81-40007-01 (S.D. Ill. April 1, 1981), for which he received a life sentence; and (6) assault with intent to commit murder in violation of 18 U.S.C. § 113, and possession of a weapon by a federal prisoner in violation of 18 U.S.C. § 1971(a)(1)(B), *United States v. Matthews*, No. CR 86-771-ER (C.D. Cal. April 12, 1987), for which he received a 25-year sentence. (*See* Exhibit A to Motion to Dismiss (doc. # 23-1).[1]

Mr. Matthews alleges three claims for relief pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Mr. Matthews' first claim for violation of his Fifth Amendment procedural due process rights consists of two parts, based on (a) his transfer to ADX on February 21, 1995 and (b) his continued confinement in ADX. (*See* "Prisoner Complaint" (doc. # 2) at pp. 7-11 of 19). Mr. Matthews alleges that he did not receive notice of his transfer to ADX, a hearing, or an opportunity to make an oral or written statement. (*See id.* at p. 8 of 19, ¶ 20). Mr. Matthews alleges that the conditions of his continued confinement "constitute atypical and significant hardship as compared with the ordinary incidents of prison life." (*See id.* at p. 7 of 19, ¶ 16).

In his second claim, Mr. Matthews alleges violation of his right to equal protection.

---

[1] The court may take judicial notice of Mr. Matthews' criminal judgments, which are in the public record. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record) (citations omitted).

Mr. Matthews alleges that Defendants "have engaged in a long-standing pattern of discrimination against plaintiff by denying him placement in less restrictive confinement and transfer out of ADX" (*see id.* at p. 12 of 19, ¶ 39) while "other prisoners with similar convictions, sentences, security and custody levels and institutional records were approved placement in less restrictive confinement and were transferred out of ADX . . . ." (*See id.* at p. 12 of 19, ¶ 40). In his third claim, Mr. Matthews alleges violation of his Eighth Amendment rights based on the conditions of confinement at ADX. Mr. Matthews alleges that Defendants "have subjected [him] to harsh and inhumane conditions of confinement and deprivation of the minimal civilized measures of life's necessities." (*See id.* at p. 14 of 19 ¶ 47).

Mr. Matthews sues Defendants Ron Wiley, the former Warden of ADX, J. Fox, Associate Warden (Programs) at ADX; Jerry Jones, Associate Warden (Operations) at ADX; Robert Hood, former Warden of ADX; Mark Munson, former Associate Warden (Programs) at ADX; Maureen S. Cruz, former Associate Warden (Operations) at ADX; and John T. Shartle, former Associate Warden (Programs) at ADX. (*See* doc. # 2 at pp. 2-3 of 19). Mr. Matthews seeks compensatory and punitive damages, and declaratory and injunctive relief. (*See* doc. # 2 at p. 17 of 19). Defendants move for dismissal of Mr. Matthews' Complaint on several grounds pursuant to Fed. R. Civ. P. and (b)(6).[2]

---

[2] Defendants raise their motion under Rule 12(b)(1) because the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) is jurisdictional. *See Ute Distrib. Corp. v. Sec'y of Interior of U.S.*, 584 F.3d 1275, 1282 (10th Cir. 2009) (appearing to suggest that § 2401(a) is jurisdictional); *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987) (same). *But see Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 2009) (holding that § 2401(a) is not jurisdictional). Because the date of Mr. Matthews' transfer to ADX is undisputed and is apparent from the pleadings, the court may resolve the application of the six-year statute of limitations under Rule 12(b)(6). *See Jones v. Bock*, 549 U.S. 199, 920-21 (2007) (a court may dismiss the action under Rule 12(b)(6), even if the statute of limitations is an affirmative defense, if the facts set forth in the complaint show that the action is time-barred).

## II. Standard of Review

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 127 S.Ct. at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Because Mr. Matthews appears *pro se*, the court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

## III. Analysis

Mr. Matthews does not specify in his pleadings whether he is suing Defendants in

their official capacities, their individual capacities, or both.  (*But see* Response (doc. # 29) at p. 1 of 10 (suggesting "both the official as well as the individual responsibility")).

To the extent that Mr. Matthews is suing Defendants in their official capacities for money damages, he cannot obtain relief under *Bivens* because there is no waiver of sovereign immunity for such claims.  *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (direct action for damages against federal agencies not recognized under *Bivens*).  *See also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. . . The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP.");  *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A Bivens action may not be brought against federal agencies or agents acting in their official capacities.").  Mr. Matthews' claims for money damages against Defendants in their official capacities are barred by sovereign immunity and are thus properly dismissed with prejudice for lack of subject matter jurisdiction.

Sovereign immunity is not a bar to Mr. Matthews' claims for injunctive relief.  *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (Congress has waived sovereign immunity in most suits for nonmonetary relief in the Administrative Procedures Act ("APA"), 5 U.S.C. § 702);  doc. # 2 at p. 4 of 19 (asserting jurisdiction pursuant to 5 U.S.C. § 702).  However, to the extent that Mr. Matthews seeks injunctive relief from Defendants in their individual capacities, a *Bivens* action is, by definition, a damages action against a federal officer in his or her individual capacity.  *See Simmat*, 413 F.3d at 1231 (*Bivens* claim lies only against a federal official in his individual capacity and cannot be brought against an individual in his or her official capacity);  *Deutsch v. U.S. Dept. of Justice*, 881 F.Supp. 49, 52 (D.D.C.1995) (Bivens suits are suits against government officials in their individual, rather than their official, capacities).  The injunctive

relief Mr. Matthews seeks is not within the authority of the Defendants in their individual capacities. Such relief is only available in an official capacity suit. Further, Mr. Matthews cannot obtain injunctive relief in a *Bivens* action already seeking damages for past constitutional violations. *See Barney v. Pulsipher*, 143 F.3d 1299, 1306 (10th Cir. 1998) (while a plaintiff who has been constitutionally injured can bring an action to recover damages, that same "plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future") (quoting *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir.1991)). Mr. Matthews' request for injunctive relief from Defendants in their individual capacities is properly dismissed with prejudice.

A.      Claim 1(a): Due Process Challenge to Transfer to ADX in 1995

Mr. Matthews claims a violation of his Fifth Amendment procedural due process rights based on his transfer to ADX on February 21, 1995, alleging that he did not receive notice of his transfer to ADX, a hearing, or an opportunity to make an oral or written statement. Defendants argue that Mr. Matthews' claim is barred by the applicable statutes of limitations. It is undisputed that Mr. Matthews filed his Complaint on or about April 29, 2009, more than fourteen years after his transfer to ADX. (*See* doc. # 2 at p. 8 of 19, ¶ 19).

"A Bivens action is subject to the limitation period for an action under Title 42 U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state where the cause of action accrues." *Roberts v. Barreras*, 484 F.3d 1236, 1238 (10th Cir.2007) (citations omitted). In Colorado, the limitation on personal injury claims is two years. See Colo. Rev. Stat. §§ 13-80-102(1)(a), (g) (establishing a two-year limitation period for "all actions upon liability created by a federal statute where no period of limitation is provided in said federal statute" and for "all other actions of every kind for which no other period of limitation is provided"); *Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983 claim).

"Although state law establishes the statute of limitations, federal law determines when plaintiffs' federal *Bivens* claims accrued." *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (citation omitted). "Under federal law, the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Van Tu*, 364 F.3d at 1199 (internal quotation marks and citation omitted). *See also Kripp v. Luton*, 466 F.3d 1171, 1175 (10th Cir. 2006) ("[F]or *Bivens* actions (the federal analogue to § 1983 claims), we have held that a claimant's cause of action accrues when the claimant knew or had reason to know 'of the existence and cause of injury which is the basis for his action.'") (citation omitted). "[I]t is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Board of Regents of State of Kansas*, 991 F.2d 628, 632 (10th Cir. 1993).

A six-year statute of limitations period applies to Mr. Matthews' claim for declaratory and injunctive relief under the APA. *See* 5 U.S.C. § 702; 28 U.S.C. § 2401(a) (providing that with certain narrow exceptions, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues"); *Nagahi v. INS*, 219 F.3d 1166, 1171 (10th Cir. 2000) ("In the absence of a specific statutory limitations period, a civil action against the United States under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a).") (citations omitted).

"At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n. 13 (11th Cir. 2005) (internal quotation marks and citations omitted). *See also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (complaint may be dismissed where the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative

defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations") (citation omitted); *Bullington v. United Air Lines Co.*, 186 F.3d 1301, 1310 n. 3 (10th Cir. 1999) (noting "that Rule 12(b)(6) is a proper vehicle for dismissing a complaint that, on its face, indicates the existence of an affirmative defense such as noncompliance with the limitations period") (citation omitted), *implicitly overruled on other grounds as recognized by Boyer v. Cordant Technologies*, 316 F.3d 1137, 1140 (10th Cir. 2003); *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute."); *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1116 (D.C. Cir. 1985) (a defense based on the statute of limitations is an affirmative defense that cannot succeed on a Rule 12(b)(6) motion unless it is unequivocally apparent from the face of the complaint that the statute precludes the action). Mr. Matthews' own allegations indicate that his claim arose from conduct that occurred in February 1995. Mr. Matthews' claim appears to be barred by the statutes of limitations.

As an affirmative defense, a statute of limitations may be subject to certain defenses such as waiver, estoppel, or equitable tolling. *See Rotella v. Wood*, 528 U.S. 549, 560 (2000) (federal statutes of limitations "are generally subject to equitable principles of tolling"). However equitable tolling is employed as an "exception, not the rule." *Rotella*, 528 U.S. at 561. Mr. Matthews' claim appears to be barred by the statutes of limitations, unless he shows a basis for tolling the limitations periods.

Mr. Matthews does not dispute that these statutes of limitations apply to his claim and has not argued any basis for tolling the statutes of limitations. Rather, Mr. Matthews argues that the statutes of limitations do not bar his claim because his transfer to ADX amounts to "a continuing and ongoing violation." (*See* doc. # 29 at p. 2 of 10).

The continuing violation doctrine, which is employed in Title VII litigation, "would

permit a plaintiff to challenge incidents that occurred outside of the statute of limitations if the incidents 'are sufficiently related and thereby constitute a continuing pattern' of wrongful conduct." *Fogle v. Pierson*, 2008 WL 821803 *5 (D. Colo. Mar. 26, 2008) (unpublished opinion) (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994)). [3] Courts in the District of Colorado have recognized that the "Tenth Circuit has not determined whether the continuing violation doctrine should be applied to complaints filed under 42 U.S.C. § 1983" and *Bivens*. *Id.* at *4. *See Sims v. New*, 2009 WL 3234225 * 7 (D. Colo. Sept. 30, 2009) (declining to apply continuing violation doctrine to *Bivens* claim); *Rezaq v. Nalley*, 2008 WL 5172363 (D. Colo. Dec. 10, 2008) (same). *See also Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir.1997) (rejecting application of continuing violation doctrine to 42 U.S.C. § 1981 claims); *Hunt v. Bennett*, 17 F.3d at 1266 (whether the continuing violation doctrine should be applied to complaints filed under 42 U.S.C. § 1983 is unresolved).

Further, as Mr. Matthews' transfer to ADX in 1995 was clearly a single discrete event, the continuing violation doctrine does not apply. Mr. Matthews alleges that on February 21, 1995, he was transferred to ADX. (*See* doc. # 2 at p. 8 of 19). While Mr. Matthews alleges "that he was not provided with notice of the reason for his transfer," he has attached to his Response a Transfer Order dated January 9, 1995 that indicates the Reason for Transfer as "Build Population." (*See* doc. # 2 at p. 8 of 19; doc. # 29 at p. 6 of 10). Mr. Matthews alleges that he "did not have a hearing, conference or an opportunity to make an oral or written statement." (*See* doc. # 2 at p. 8 of 19). Mr. Matthews is challenging a single transfer decision. *See Fogle v. Pierson*, 2008 WL 821803 at *5 (series of decisions made by Defendants over a multi-year period which had the result of Plaintiff being continuously confined in administrative segregation were discrete, independent decisions to which the continuing violation doctrine did not apply).

---

[3]     Copies of unpublished decisions cited in this Recommendation are either attached here or have been provided to Mr. Matthews by Defendants. (*See* Exhibits to doc. # 23).

Even in the context of Title VII, from which the continuing violation doctrine is derived, discrete decisions are not treated as part of a continuing violation. *See, e.g., Davidson v. America Online, Inc.*, 337 F.3d 1179, 1185 (10th Cir. 2003) (concluding "that when a plaintiff pursues several disparate treatment claims based on discrete discriminatory acts, the limitations period will begin to run for each individual act from the date on which the underlying act occurs."); *De Leon Otero v. Rubero*, 820 F.2d 18, 20 (1st Cir. 1987) (Defendants' refusal to reinstate plaintiff "was not a separate act of discrimination, but rather a consequence of his initial demotion."); *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018-19 (1st Cir. 1979) (denial of requests to be retransferred back to original department after allegedly discriminatory initial transfer did not constitute a continuing violation); *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 884 (S.D. Tex. 2010) (as discrete acts, job transfer and retransfer cannot be part of a continuing violation).

As demonstrated by the pleadings, Mr. Matthews' claim is barred by both the two-year statute of limitation for *Bivens* claims and the six-year statute of limitations under the APA. Mr. Matthews' claim based on his transfer to ADX on February 21, 1995 is properly dismissed with prejudice.

B.      Claim 1(b) Challenging Continued Placement in ADX

In addition to his claim challenging his initial transfer to ADX on February 21, 1995, Mr. Matthews alleges that his continued placement at ADX is in violation of his Fifth Amendment procedural due process rights. Mr. Matthews alleges Defendants have violated his due process rights by continuing his confinement at ADX without a hearing.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. Amend. V. The Supreme Court has recognized *Bivens* liability for violations of the Fifth Amendment Due Process

Clause.  *See Davis v. Passman*, 442 U.S. 228 (1979) (finding implied damages remedy under the Due Process Clause of the Fifth Amendment).  To state a due process claim, Mr. Matthews must allege two elements: (1) that a recognized liberty or property interest has been interfered with by the Defendants, and (2) that the procedures attendant to that deprivation were not constitutionally sufficient.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  Defendants contend that Mr. Matthews has not sufficiently pled a due process violation because he has demonstrated no loss of a liberty interest.

Prisoners retain " 'only a narrow range of protected liberty interests.' "  *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1982), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).  The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  *See also Hewitt*, 459 U.S. at 468 ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.");  *Meachum v. Fano*, 427 U.S. 215, 228 (1976) ("Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.").

Prior to 1995, the existence and scope of an inmate's liberty interest, and therefore whether there was a due process violation, was determined by the language of the applicable regulations.  However, in *Sandin v. Conner*, the United States Supreme Court held that the touchstone of the inquiry into whether a protected liberty interest exists is whether the conditions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  515 U.S. at 484, *implicitly overruled on other grounds by Edwards v Balisok*, 520 U.S. 641 (1997).  An inmate contending that the

conditions of confinement give rise to a constitutionally-protected liberty interest must show that the conditions constitute an "atypical and significant hardship" when compared to the ordinary incidents of prison life.  *Wilkinson*, 545 U.S. at 223.  *See also Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006) ("[T]he Supreme Court held that a deprivation occasioned by prison conditions or a prison regulation does not reach protected liberty interest status and require procedural due process protection unless it imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).  Whether confinement "conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination. . . ." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-87).

The Tenth Circuit has applied several factors in analyzing whether conditions impose such an atypical and significant hardship that a liberty interest exists.  These factors include whether: "(1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate . . . ." *Estate of DiMarco v. Wyo. Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).  "[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts."  *Id.*

First, Mr. Matthews' criminal history alone supports his placement at ADX based on a legitimate penological interest.  (*See* Exhibit A to Motion to Dismiss (doc. # 23-1) (*United States v. Matthews*, No. J 75 CR-22 (E.D. Ark. May 14, 1975), *United States v. Matthews*, No. H 75 CR-5 (E.D. Ark. May 14, 1975), *United States v. Matthews*, No. CR 76-70-E (E.D. Ill. June 1, 1977), *United States v. Matthews*, No. CR 78-02033-04-B (E.D. Ill. Dec. 27, 1978), *United States v. Matthews*, No. 81-40007-01 (S.D. Ill. April 1, 1981), *United States v. Matthews*, No. CR 86-771-ER (C.D. Cal. April 12, 1987)).  The court may take judicial notice of Mr. Matthews' criminal history, as it is in the public record.  *Ahidley*, 486 F.3d at

1192 n.5. This first factor weighs in Defendants' favor based on Mr. Matthews' significant history of violent conduct while incarcerated and escape. *See Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir.1996) (administrative segregation due to legitimate concerns about plaintiff's escape history and prison security did not impose an atypical and significant hardship on plaintiff in relation to the ordinary incidents of prison life).

Second, Mr. Matthews' general allegations of restricted liberty, amenities, recreation, visitation and privileges are conclusory and fail to rise to a condition that is sufficiently atypical or significant in relation to the ordinary incidents of prison life to implicate a liberty interest. The conditions at ADX have previously been determined not to give rise to a protected liberty interest. *See Georgacarakos*, 2010 WL 1291833 at * 12 (D. Colo. March 30, 2010) (citing *Jordan v. Federal Bureau of Prisons*, 191 Fed. Appx. 639, 651-51 (10th Cir. 2006) (unpublished) (finding restrictions such as those at ADX cannot be deemed to be atypical and significant of their own accord)); *Muhammad v. Finley*, 74 Fed. Appx. 847, 849 (10th Cir. 2003) (upholding district court's dismissal of an inmate's claim that disciplinary segregation at the ADX implicated a liberty interest) (unpublished). *See also, e.g., DiMarco*, 473 F.3d at 1343 (deprivations resulting from confinement in administrative segregation did not impose such an atypical and significant hardship as to meet the *Sandin* standard); *Lekas v. Briley*, 405 F.3d 602, 610-13 (7th Cir. 2005) (conditions of cell size, religious access/freedom, visiting procedures and telephone, opportunity for exercise and out-of-cell activity, commissary restrictions, access to both general and legal libraries, access to radio and television, access to legal property, meal procedures, and showers and other hygiene needs did not impose an atypical and significant hardship); *Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996) (placement in administrative segregation did not give rise to a liberty interest); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1995) (an inmate's confinement in disciplinary segregation where he experienced frequent lockdowns, restricted access to the law library, denial of educational opportunities, and loss of social

and rehabilitative activities did not impose an atypical or significant hardship). Mr. Matthews' generalized and conclusory allegations of the conditions of confinement do not state that he is subject to different conditions than any other inmate at ADX or different conditions than those that have been determined not to impose atypical or significant hardship.

As to the third enumerated factor, Mr. Matthews alleges that his placement is "indefinite" because he "has been told by Defendants Wiley, Fox, Jones, Hood, Munson, Cruz, Shartle and others that he will never get out of ADX . . . ." (*See* doc. # 2 at pp. 9-10 of 19). While "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard, *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir.1999), Mr. Matthews' allegation that he has been confined in administrative segregation for a period of 14 years may constitute atypical and significant restraint deserving due process protections. *See Trujillo v. Williams*, 465 F.3d 1210, 1225 (10th Cir. 2006) (allegation of 750 days spent in segregation "may itself be atypical and significant"); *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000) (prisoner's almost eight years in administrative custody was "atypical"). However, the court may take judicial notice of the BOP's regulations. *See Gleave v. Graham*, 954 F.Supp. 599, 605 (W.D.N.Y. 1997) (taking judicial notice of "Program Statements" issued by the Bureau of Prisons); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement).

> Until 2006, classification of inmates in the BOP was governed by BOP Program Statement 5100.07. As of September 12, 2006, that Program Statement was amended, and the currently operative version is Program Statement 5100.08. Both Program Statements provide that an inmate's security classification is reviewed on at least an annual basis, if not more frequently due to intervening events. The purpose of the classification review is to determine what level of supervision is appropriate for the inmate, and, in turn, what in what type of facility he should be housed. The regulations set forth more than a dozen factors to be considered, such as the severity of the inmate's offense, his criminal history score, his age and education level, history of drug or alcohol abuse, etc. Each factor directs that a certain number of points be assigned based on the inmate's circumstances- e.g. a

low criminal history score might result in 0 or 2 points being assessed, while a higher criminal history score might result in as many as 8 or 10 points being assessed. The point scores for each factor are totaled, yielding an overall number. Separately, the BOP determines whether certain "public safety factors" are present for a given inmate-factors such as whether the inmate has more than 20 years remaining on his sentence, whether he is a member of a disruptive group, whether he has a prior escape attempt, etc. Once an inmate's score is calculated and his public safety factors, if any, are assigned, the BOP consults a table to determine the inmate's security level. Under Program Statement 5100.08, . . . [a]n inmate with 24 or more points is automatically considered a "high security" inmate. Under the older version of the Program Statement, 15 or more points placed the inmate in a "high security" classification (although factors and points were attributed differently under the prior Program Statement than under the current version).

*Georgacarakos,*, 2010 WL 1291833 at * 6. Mr. Matthews' allegation that "he will never get out of ADX" is not plausible in light of the BOP regulations. Further, Mr. Matthews' own pleadings indicate that he received regular reviews of his placement at ADX. (*See* doc. # 2 at p. 10 of 19) ("[t]he classification team consistently recommended that the plaintiff should be considered or placement in a less restrictive confinement and be transferred out of ADX, however, these recommendations were repeatedly overruled by Defendants . . ."). Mr. Matthews has not alleged any specific basis upon which he disagrees with the decisions to continue his confinement at ADX. This factor also weighs in Defendants' favor.

As to the fourth enumerated factor, Mr. Matthews has not alleged that his placement at ADX increases the length of his sentence. In sum, Mr. Matthews' allegations do not give rise to a protected liberty interest to support a claim for violation of due process based on his continued placement at ADX.

Even if a protected liberty interest exists, Defendants assert that Mr. Matthews received adequate due process. To determine what level of process is due, the court considers three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "Prisoners held in lawful confinement have their liberty interests curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson*, 545 U.S. at 225. Due process is satisfied if Mr. Matthews received: (1) a sufficient level initial level of process, *i.e.,* a reasoned examination of the assignment; (2) the opportunity to receive notice of and respond to the decision; and (3) safety and security concerns are weighed as part of the placement decision. *DiMarco*, 473 F.3d at 1344 (citation omitted).

The BOP's regulation on security classification provides for review on at least an annual basis. Mr. Matthews' pleadings indicate that he received regular reviews of his placement at ADX. (*See* doc. # 2 at p. 10 of 19). Due process requires no more than the annual review procedure that the BOP provides. *See Jones v. Mabry*, 723 F.2d 590, 594 (8th Cir.1983) (due process requires procedure for periodic review of administrative segregation status); *Hunt v. Sapien*, 480 F.Supp.2d 1271, 1277 (D. Kan. 2007) (placement was not indefinite where reviewed weekly for the first 60 days, and subsequently reviewed monthly, after 180 days, and annually). The court agrees with Defendants that Mr. Matthews fails to state a claim that he had a liberty interest in avoiding continued confinement at ADX or was deprived of a sufficient level of procedural due process.

C.     Claim Two: Equal Protection Claim

Mr. Matthews alleges violation of his right to equal protection based on "a long-standing pattern of discrimination against plaintiff by denying him placement in less restrictive confinement and transfer out of ADX" while "other prisoners with similar convictions, sentences, security and custody levels and institutional records were approved placement in less restrictive confinement and were transferred out of ADX . . . ." (*See* doc. # 2  at p. 12 of 19, ¶¶ 39-40). The Equal Protection Clause prohibits discrimination by

government which either "burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). In order to state an equal protection claim, Mr. Matthews must allege that he was "similarly situated" to other inmates who are treated differently, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). Mr. Matthews has not alleged facts sufficient to satisfy these two elements.

Mr. Matthews does not allege that he was deprived of a fundamental right and inmates do not have a fundamental right to be free from administrative segregation. *See Penrod v. Zavaras*, 94 F.3d at 1406 ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.") (internal quotation marks and citation omitted). Mr. Matthews' allegation of a liberty interest does not amount to a fundamental right for equal protection purposes. *Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994) (allegation of liberty interest did not amount to a fundamental right for substantive due process purposes). Nor does Mr. Matthews allege that Defendants treated him differently because of any suspect classification.

Mr. Matthews has not specifically identified any similarly situated prisoners in his pleadings. Mr. Matthews argues that "Plaintiff along with several hundred other inmates was transferred to ADX in 1995 to build the inmate population" and that "the majority of the several hundred (similar[ly] situated) inmates were allowed to program out of ADX while Plaintiff was not." (*See* Response (doc. # 29) at p. 4 of 10). Mr. Matthews has alleged nothing more than a conclusory assertion that he and unidentified other inmates were similarly-situated. His conclusory allegations regarding "other prisoners with similar convictions, sentences, security and custody levels and institutional records" fail to plausibly support his claim that similarly situated inmates at ADX have been granted

"placement in less restrictive confinement and transfer out of ADX." (*See* doc. # 2 at p. 12 of 19). It is not plausible that "there are no relevant differences between [Mr. Matthews] and other inmates that reasonably might account for their different treatment." *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable."). Mr. Matthews acknowledges that "plaintiff has no knowledge of the other inmates criminal history, because their criminal histories are not relevant to this claim." (*See id.*). However, prison officials can consider "whatever . . . seems relevant in making the qualitative judgment of how to classify an individual inmate," including Mr. Matthews' significant criminal history. *Fogle*, 435 F.3d at 1261. *See also* 18 U.S.C. 3621(b) (2007) ("The Bureau may designate any available penal or correctional facility . . . ").

Mr. Matthews' allegations are too vague and conclusory to state a claim upon which relief can be granted. Other than general conclusory allegations, Mr. Matthews alleges no specific details about other inmates, no specific differences in Defendants' treatment of other inmates, and no specific dates that such inmates progressed out of ADX. Mr. Matthews has not identified any inmate similarly situated to him that Defendants have allowed to progress out of ADX. *See Abbott v. McCotter*, 13 F.3d 1439, 1441 (10th Cir.1994) (upholding dismissal of conclusory equal protection claim for frivolousness). Mr. Matthews's equal protection claim is properly dismissed for failure to state a claim upon which relief can be granted.

D.     Claim Three: Eighth Amendment Claim

In his third claim, Mr. Matthews alleges violation of his Eighth Amendment rights based on the conditions of confinement at ADX. Mr. Matthews alleges that Defendants "have subjected [him] to harsh and inhumane conditions of confinement and deprivation

of the minimal civilized measures of life's necessities." (*See id.* at p. 14 of 19 ¶ 47).

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII. Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either involve the wanton and unnecessary infliction of pain, that they are grossly disproportionate to the severity of the crime, or that they entail serious deprivation of basic human needs." *Georgacarakos v. Wiley*, 2010 WL 1291833 * 11 (D. Colo. March 30, 2010) (internal quotation marks and citation omitted). "Prison officials must provide adequate food, clothing, shelter, and medical care to inmates, and take reasonable measures to guarantee those inmates' safety." *Id.* (citation omitted).

An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As for the objective component, "extreme deprivations" are required to make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). Thus, in a conditions-of-confinement case, a "sufficiently serious" deprivation is shown when "a prison official's act or omission . . . result[s] in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297). The "deliberate

indifference" subjective standard applies to claims of inhumane conditions of confinement. *Wilson*, 501 U.S. at 303-04. A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

As to the objective component, Mr. Matthews' allegations do not state a claim for deprivation "of the minimal measure of life's necessities," as required to state a claim upon which relief can be granted pursuant to the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 36 (1993) (allegations were not sufficient to show exposure "to a risk that is so grave that it violates contemporary standards of decency"); *Estate of DiMarco*, 473 F.3d at 1337-38 (conditions of confinement in most restrictive housing pod "met the basic necessities of life"); *Trujillo*, 465 F.3d at 1225 n. 17 (allegations of limited access to education, employment, religious programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not state an Eighth Amendment claim) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)); *Smith v. Romer*, 1997 WL 57093 at * 2 (10th Cir. 1997) (unpublished) (allegations of twenty-three hours per day of confinement, meals in cells, limited vocational, educational and recreational services offered through television, and light always on failed to state an Eighth Amendment claim).

The Tenth Circuit "has previously considered an essentially identical recitation of the conditions at ADX and concluded that they do not violate the 8th Amendment." *Georgacarakos,*, 2010 WL 1291833 at * 12 (citing *Ajaj v. United States*, 293 Fed. Appx. 575, 582-84 (10th Cir. 2008) (unpublished) (finding elements such as "lockdown 23 hours per day in extreme isolation," "indefinite confinement," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an 8th Amendment violation)). *See also Hill v. Pugh*, 75 Fed. Appx. 715, 721(10th Cir. Sept. 11, 2003) (ADX conditions "[show]

neither an unquestioned and serious deprivation of basic human needs, nor intolerable or shocking conditions.").  "The conditions at ADX . . . are not so extreme or inhumane that they could be deemed a significant departure from contemporary standards of decency, applied to the prison context." *Georgacarakos,*, 2010 WL 1291833 at * 12.  The general conditions which Mr. Matthews alleges do not rise to the serious level implicating a violation of his Eighth Amendment rights.

As to the subjective component, Mr. Matthews has not alleged that Defendants kept him in ADX with deliberate indifference to a risk of harm.  *See Farmer*, 511 U.S. at 837 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").  Mr. Matthews' allegations do not state a claim of "subjective recklessness" of Defendants. *Farmer*, 511 U.S. at 839-40.

Further, Mr. Matthews' allegations are too vague and conclusory to state a claim upon which relief can be granted.  Other than general conclusory allegations of "harsh and inhumane conditions" (*see* doc. # 2 at p. 14 of 19; *see also* pp. 6, 8 of 19 (listing in conclusory fashion numerous conditions of confinement at ADX: long-term and indefinite solitary confinement, noise, sleep deprivation, lack of proper medical and mental health care, lack of daily access to fresh air and sunlight, limited opportunity to communicate with others, severe restrictions on property rights, visits, telephone and movements, strip searches, reduced environmental stimuli, lack of vocational training and  congregational religious services), Mr. Matthews has not sufficiently alleged specific dates, circumstances, or conduct by the named Defendants.  In sum, Mr. Matthews' allegations are not adequate to state an Eighth Amendment violation.

E.      Qualified Immunity

To the extent that Mr. Matthews is suing Defendants in their individual capacities,

Defendants raise the defense of qualified immunity. The Supreme Court has recognized a qualified immunity defense for *Bivens* claims against federal officials. *See Johnson v. Fankell*, 520 U.S. 911, 914 (1997). Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008).

> Resolution of a dispositive motion based on qualified immunity involves a two-pronged inquiry. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, . . . the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted). "A reviewing court may exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

As the court has concluded in this Recommendation that Mr. Matthews has failed to state any claim upon which relief can be granted against them, Defendants in their individual capacities are entitled to qualified immunity from his claims brought pursuant to *Bivens*. *See Wilder*, 490 F .3d at 815 (instructing district court on remand to enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to carry his burden to show violation of a constitutional right).

Defendants in their individual capacities are also entitled to qualified immunity as to claim 1(a) based upon Mr. Matthews' transfer to ADX in 1995 because the right at issue was not clearly established at the time of the Defendants' alleged conduct. *See Ajaj*, 293 Fed. Appx. at 586 ("Thus, we have no qualm in concluding that the law was not clearly established as to whether Plaintiff had a protected liberty interest in avoiding transfer to ADX in 2002.").

Accordingly, IT IS RECOMMENDED that "Defendants' Motion to Dismiss" (filed October 22, 2009) (doc. # 23) be GRANTED and this civil action be dismissed.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of

justice require review).

DATED at Denver, Colorado, this 16th day of August, 2010.

BY THE COURT:


   s/Craig B. Shaffer
United States Magistrate Judge